**No. 25-1333**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STEVEN ISAAC

Plaintiff-Appellant

v.

MIDDLE EAST BROADCASTING NETWORKS, INC.

Defendant-Appellee

On Appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division
The Honorable Leonie M. Brinkema, U. S. District Court Judge

## OPENING BRIEF FOR PLAINTIFF-APPELLANT

Dirk McClanahan, Esq.
(VSB# 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Phone: (703) 520-1326
Email: dmcclanahan@mcplegal.com
*Counsel for Plaintiff-Appellee*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS</u>

1. Is party/amicus a publicly held corporation or other publicly held entity?  NO

2. Does party/amicus have any parent corporations?  NO

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  NO

4. Is there any other publicly held corporation or other publicly held entity that has a directly financial interest in the outcome of the litigation?  NO

5. Is party a trade association?  NO

6. Does this case arise out of a bankruptcy proceeding?  NO


 /s/ Dirk McClanahan_____
Dirk McClanahan, Esq. (VSB# 81208)
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Phone: (703) 520-1326
Email: dmcclanahan@mcplegal.com
***Counsel for Plaintiff- Appellant***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE ................................................................1

STATEMENT OF FACTS ......................................................................3

    A.    Background ..............................................................................3

    B.    Comparators identified in Amended Complaint ...................4

        i.    Mr Tawila .......................................................................4

        ii.    Ms. Jebai, Ms. Bdewi, Mr. Ghanem, Mr. Khawly, and Ms. Dehen (Other non-Iraqi journalists).............4

    C.    Atmosphere of Discriminatory Animus ................................5

SUMMARY OF ARGUMENT ...............................................................5

ARGUMENT ..........................................................................................6

    Standard of Review.........................................................................6

    Discussion ......................................................................................7

    A.    Isaac was treated differently from similarly situated employees ...............................................................................8

        i.    Isaac was NOT told what the alleged posting was at termination, and they would not identify it.................9

        ii.    Isaac was NOT terminated by his direct supervisor, as the Code is enforced by the office of the President of MBN....................................................................9

        iii.    Comparators with the Same Supervisor, Job Title, and Job Duties................................................................10

        iv.    MBN Journalists without the same direct supervisor ...............12

        v.    Plaintiff has pled that his Employer was aware of postings by Comparators........................................14

CONCLUSION .....................................................................................15

i

REQUEST FOR ORAL ARGUMENT ...................................................................16

CERTIFICATE OF COMPLIANCE ...................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................................7

*Bing v. Brivo Sys., LLC*,
  959 F.3d 605 (4th Cir. 2020) ................................................................. 7, 11, 14

*Coleman v. Maryland Court of Appeals*,
  626 F.3d 187 (4th Cir. 2010) ..............................................................7

*Eaton v. Dep't of Corr.*,
  657 F.3d 551 (7th Cir. 2011) .............................................................13

*Ercegovich v. Goodyear Tire & Rubber Co.*,
  154 F.3d 344 (6th Cir. 1998) ............................................................13

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .............................................................................7

*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000) ...............................................................13

*Hawn v. Exec. Jet Mgmt., Inc.*,
  615 F.3d 1151 (9th Cir. 2010) ..........................................................13

*Haynes v. Waste Connections, Inc.*,
  922 F.3d 219 (4th Cir. 2019) ............................................................13

*Louzon v. Ford Motor Co.*,
  718 F.3d 556 (6th Cir. 2013) ............................................................13

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
  780 F.3d 582 (4th Cir. 2015) ..............................................................7

*McMillan v. Castro*,
  405 F.3d 405 (6th Cir. 2005) ............................................................13

*Mitchell v. Toledo Hosp.*,
  964 F.2d 577 (6th Cir. 1992) ............................................................13

*South v. Ill. Env't Prot. Agency*,
  495 F.3d 747 (7th Cir. 2007) ............................................................13

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ..........................................7

*Tinsley v. City of Charlotte*,
    854 F. App'x 495 (4th Cir. 2021) ................................................... 8, 13

*Vieira v. Anderson (In re Beach First Nat'l Bancshares)*,
    702 F.3d 772 (4th Cir. 2012) ...........................................................7

*Vitol, S.A. v. Primerose Shipping Co.*,
    708 F.3d 527 (4th Cir. 2013) ...........................................................7

*Williams v. Ricoh Americas, Corp.*,
    No. 1:15-CV-01255, 2016 WL 4926442 (E.D. Va. Aug. 2, 2016) ......................8

*Woods v. City of Greensboro*,
    855 F.3d 639 (4th Cir. 2017) .........................................................7, 8

## Statutes & Other Authorities:

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1331 ........................................................................1

42 U.S.C. § 2000e .......................................................................1

Fed. R. Civ. P. 8(a)(2) ..................................................................7

Fed. R. Civ. P. 12(b)(6) ...............................................................6, 7

## JURISDICTIONAL STATEMENT

This appeal arises from the motion to dismiss the Amended Complaint and final judgment of the United States District Court for the Eastern District of Virginia (Alexandria Division), issued March 7, 2025. (JA217). The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 2000e *et seq*. Plaintiff-Appellant, Steven Isaac ("Isaac"), timely appealed that ruling on March 30, 2025. (JA218). This Court has jurisdiction of the appeal from the final decision from the District Court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding on motion to dismiss that plaintiff-appellant Isaac failed to state a claim for national origin discrimination under 42 U.S.C. § 2000e *et seq*.?

2. Whether the district court erred when it concluded that Isaac had not met its burden at the pleading stage under 42 U.S.C. § 2000e *et seq*.?

3. Whether the district court erred in entering Defendant's motion to dismiss the Amended Complaint when it failed to treat as true, and the reasonable inferences therefrom, the facts alleged by plaintiff-appellant?

## STATEMENT OF THE CASE

Isaac was previously employed by Middle East Broadcasting Networks, Inc.'s ("<u>Defendant</u>" or "<u>MBN</u>") and alleges claims for national origin

1

discrimination in violation of Title VII of the Civil Rights Act of 1964. MBN filed a renewed motion to dismiss, which was granted by the district court. Isaac opposed their motion and his Amended Complaint contained sufficient facts and circumstances for national origin discrimination that precluded the district court from granting the motion to dismiss. The sole issue MBN argues in its Motion to Dismiss is that Plaintiff's Amended Complaint is deficient because it fails to articulate a cognizable basis for the fourth element of the *McDonnell Douglas* framework, that Plaintiff experienced different treatment from similarly situated employees ("comparators") outside of his protected class.

The court erred in holding that Isaac failed to sufficiently plead a case for national origin discrimination under the McDonnell Douglas framework at the pleading stage. (JA123-134, and JA217). The court erred in holding that Isaac failed to demonstrate that he was treated differently than similarly situated employees outside of his protected class. (JA123-134, and JA217).

In so holding, the district court erred by not considering the facts and the reasonable inferences from facts presented in the light most favorable to Isaac. Thus, in failing to consider facts in the light most favorable to Isaac, the non-moving party, the district court erred by failing to find that Isaac had presented evidence supporting a prima facie case for his national origin claim under Title VII. (JA135-177). In addition, the Court's view of the requirement of pleadings comparator applied to strict and narrow of a standard.

2

## STATEMENT OF FACTS

### A.    Background

Plaintiff-Appellant, Steven Isaac ("Isaac"), was an Iraqi-American journalist with MBN. (JA135).  Plaintiff was originally retained as a 1099 contractor in May 2018 but was converted to a W-2 employee on March 10, 2020. (JA135). His role the entire time was as a correspondent. (JA135).  A detailed description of his position is identified as Exhibit B to the Amended Complaint.  (JA135).  On or about September 2, 2022, Isaac was terminated from his position with MBN. (JA135).   MBN provides news and information via satellite television (Alhurra TV), radio (Radio Sawa) and multiple digital platforms. (JA136). MBN's headquarters is in Springfield, Virginia. (JA136).

When Plaintiff was terminated, his direct supervisor was Kalyl Lubad ("Mr. Lubad").  (JA137).  At the time of Plaintiff's termination, MBN's Acting President was Hassan Shwiki ("Mr. Shwiki").  (JA137).

All MBN Journalists are required to abide by MBN's Journalistic Code of Ethics (the "Code").  (JA137).  The Code is attached to Plaintiff's Amended Complaint as Exhibit A.  (JA137).  MBN Journalists are defined as those individuals who assign, write, report, edit, post, produce and broadcast news on any of MBN's platforms, including radio, television and digital media (hereinafter referred to as "Journalists"). (JA137).  As correspondent for MBN, Plaintiff was an MBN Journalist.  (JA137).

## B.    Comparators identified in Amended Complaint.

### i.    Mr Tawila.

Mr. Tawila was identified as having the same supervisor, same job duties, and that he had violated the Code, but only been given a two-week suspension instead of termination. (JA139). This is a classic comparator.

### ii.    Ms. Jebai, Ms. Bdewi, Mr. Ghanem, Mr. Khawly, and Ms. Dehen (Other non-Iraqi journalists).

MBN employed two investigative reporters at the time of Plaintiff's termination: Plaintiff, Randa Jebai (Non-Iraqi) ("Ms. Jebai") and Ghalia Bdewi (Non-Iraqi) ("Ms. Bdewi"). (JA139). Ms. Jebai and Ms. Bdewi were journalists. (JA139). Ms. Jebai and Ms. Bdewi were posting on social media. (JA139). Ms. Jebai and Ms. Bdewi were subject to the enforcement of the Code by the office of president. (JA137). As MBN Journalists, Ms. Jebai and Ms. Bdewi were also subject to MBN's Code. (JA139). Ms. Jebai and Ms. Bdewi are comparators to Plaintiff. (JA139 and JA140).

Both Ms. Jebai and Ms. Bdewi regularly post on social media. (JA139 and 140). Ms. Jebai and Ms. Bdewi have never received reprimands for violating MBN's Code. (JA139 and JA140).

Non-Iraqi Journalists Pedro Ghanem ("Mr. Ghanem"), Joe Khawly ("Mr. Khawly") and Tamara Abou Dehen ("Ms. Dehen") frequently tweet their political opinions without reprimand from MBN. (JA140). Their posts violate the Code,

4

examples are attached to the Complaint as Exhibit C. (JA140 and JA141). These

men are all journalists bound by the Code which is enforced by the office of the

President at MBN (JA140 and JA141). Mr. Ghanem, Mr. Khawly, and Ms. Dehen

are comparators to Plaintiff.  (JA140 and JA141).

### C.    Atmosphere of Discriminatory Animus.

By contrast, Iraqi Journalists Mr. Habib, Mr. Aljizzani, and Plaintiff were all

terminated for allegedly violating the Code.  (JA137 and JA138).  MBN gave no

further explanation and did not point to any content that allegedly violated MBN's

Code.  (JA137 and JA138).  Although Plaintiff, Mr. Habib, and Mr. Aljizzani were

allegedly terminated for violating MBN's Code they were actually terminated on

the basis of their national origin.  (JA137 and JA138). There was a discriminatory

atmosphere at MBN against Iraqi Journalists. (JA135-177).

## SUMMARY OF ARGUMENT

Based on the facts alleged in the Amended Complaint, the district court

erred in granting MBN's motion to dismiss resulting in the dismissal of the

Amended Complaint with prejudice.  In considering a motion to dismiss the court

is required to consider all facts in the light most favorable to the non-moving party,

drawing all reasonable inferences in favor of the non-moving party, in this case

Isaac.

The court erred when it held that Isaac failed to sufficiently plead a case for national origin discrimination under the McDonnell Douglas framework for failing to demonstrate that similarly situated employees outside the protected class received more favorable treatment. (JA134).

First, Isaac identified one non-Iraqi journalists (Mr. Tawila) who had the same exact position title and direct supervisor.  That individual was found to have violated the Code, but only received a two-week suspension.

Second, Isaac further identified 5 additional non-Iraqi journalists (Ms. Bdewi, Ms. Jebai, Mr. Ghanem, Mr. Khawly, and Ms. Dehen) who were also bound by the Code. In this circumstance Isaac identified them as actually posting clear code violations with no recourse by MBN. (JA138-141).

In addition, Isaac goes further and indicates that he alone is not being targeted, but a multitude of Iraqi journalists are being targeted.  Specifically identifying two other Iraqi journalists who were terminated with similar baseless accusations. (JA137-141).  These facts are sufficient to support an argument that there was an atmosphere of discriminatory animus.

## ARGUMENT

### Standard of Review

"Appellate courts review a district court's dismissal of an action under Fed. R. Civ. P. 12(b)(6) de novo. When reviewing a Fed. R. Civ. P. 12(b)(6) dismissal,

appellate courts accept all factual allegations in the complaint as true. Appellate courts review questions of law de novo." *Vieira v. Anderson (In re Beach First Nat'l Bancshares)*, 702 F.3d 772, 775 (4th Cir. 2012)(internal citations omitted).

## Discussion

A complaint need only contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The pleading requirements remain the same, "[i]n the context of a Title VII employment discrimination claim, to survive a motion to dismiss, the plaintiff need not plead a prima facie case of discrimination; <u>instead, the plaintiff is required to plausibly state a violation of Title VII that rises above a speculative level.</u> *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)(emphasis added) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002*); McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015); and *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955)); *See also*, *Woods v. City of Greensboro*, 855 F.3d 639, 650-51 (evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons

generally should not be made at the motion to dismiss stage); *see also, id*. at 652

("[D]iscrimination claims are particularly vulnerable to premature dismissal because

civil rights plaintiffs often plead facts that are consistent with both legal and illegal

behavior, and civil rights cases are more likely to suffer from information-asymmetry,

pre-discovery.").

Isaac has set forth a prima facie case for discrimination. Plaintiff asserts in his

opposition to the motion to dismiss that Plaintiff was discriminated against. Typically,

in order to establish a prima facie case of national origin discrimination, a plaintiff

must demonstrate: (1) membership in a protected class; (2) satisfactory job

performance; (3) adverse employment action; and (4) different treatment from

similarly situated employees outside the protected class. *Williams v. Ricoh Americas,*

*Corp*., No. 1:15-CV-01255, 2016 WL 4926442, at *4 (E.D. Va. Aug. 2, 2016). In its

motion to dismiss the Amended Complaint, MBN takes issue with only element (4).

### A.    Isaac was treated differently from similarly situated employees.

"… [A]n appropriate comparator must be similar to the plaintiff in all relevant

respects. However the similarly-situated requirement is phrased, it is meant to be

'flexible, common-sense, and factual.'" *Tinsley v. City of Charlotte*, 854 F. App'x 495,

510 (4th Cir. 2021). In the present case, Plaintiff has gone well beyond plausibly

asserting a violation that goes over the speculative level. Plaintiff has identified one

comparator with the same job title and supervisor, and, five comparators who are

8

journalists at MBN, who are all bound by the Code, which is enforced by the office of the president, including samples of their postings.

i.   <u>Isaac was NOT told what the alleged posting was at termination, and they would not identify it.</u>

When Isaac was terminated the Defendant only identified there was a violation of the Code based on an alleged tweet, but MBN could not actually identify any alleged postings that violated the Code.  (JA138).  Only in the EEOC, for the first time ever, did they conjure the alleged postings.  Even those after claimed and identified postings are facially innocuous.  As a result, at the motion to dismiss stage, Plaintiff has contended that Defendant had no actual postings or basis for the termination that it could point to.  This is in support of its theory that there is no violation of the Code by Plaintiff at all.  This issue was asserted in the motion to dismiss as supporting both direct evidence of discrimination and as significant indirect evidence of disparate treatment.  Further still, it demonstrates a migrating defensive theory of Defendant, which is further support for the discrimination theory, especially at the motion to dismiss stage.

ii.  <u>Isaac was NOT terminated by his direct supervisor, as the Code is enforced by the office of the President of MBN.</u>

The Code is applied to all journalists at MBN.  (JA137). There is no distinction based on type of journalist only that you are defined as a journalist. (JA137).  The enforcement of the Code comes from MBN's office of the president,

9

Mr. Shwiki. (JA138). Plaintiff's direct supervisor, Mr. Lubad, told Plaintiff that he did not want Plaintiff to be reprimanded or terminated, nor did he advocate or request it. (JA138). MBN, through the office of president, did not ask Mr. Lubad for his opinions, thoughts, or assessments at all. (JA138). This issue is significant for determining the scope of comparators beyond an analysis of just the direct supervisor. All journalists are held to the Code, which is being enforced not by individual supervisors, but by the office of the president of MBN. As such, additional comparators would be those bound by the Code who were subject to enforcement by the office of the president at MBN. Plaintiff has alleged that this is all journalists and all comparators.

        iii.   <u>Comparators with the Same Supervisor, Job Title, and Job Duties.</u>

In the present case, Isaac identified his most comparable comparator was Khalil Bin Tawila (an Algerian born correspondent) who shared the same supervisor, job title, were bound by the MBN Code, and it was identified that they had the same job responsibilities as Plaintiff, and, the Code was enforced by the office of the president. (JA139). Plaintiff pled that Mr. Tawila engaged in clear violations of the Code, while on an opposing parties network, and he was only suspended for two weeks, but not terminated. (JA139). In fact, while Mr. Tawila was out Plaintiff covered his assignments. (JA139).

Mr. Tawila alone, should be a more than adequate comparator.  However, the Court in its initial memorandum to the first Complaint and reiterated in the argument at the motion to dismiss the Amended Complaint took the position that to have a comparator that satisfied the pleadings standard, Plaintiff needed to evidence or prove that 1.) a non-Iraqi posted about 2.) Iraq on social media, and then, 3.) that they were not punished. Respectfully, the Court erred in this analysis.  The Plaintiff has identified same supervisor, job title, application of the Code, same job responsibilities (beyond even the same title).  As such, plaintiff has more than met its pleading burden to plausibly state a violation of Title VII that rises above a speculative level. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)(emphasis added).

While the comparator that the Court wanted would certainly be comparable, there is nothing in the Plaintiff's pleading that indicates that Plaintiff was terminated for posting about Iraq specifically.  To the contrary, Plaintiff's complaint asserts that he was told he was terminated for a social media posting that violated the Code. (JA138 paragraph 35)(emphasis added).  There is no allegation in the Complaint express or implied that Plaintiff was terminated for posting about Iraq.  Again, importantly, the only allegation in the Complaint is that Plaintiff was told his posting violated MBN's journalistic Code of ethics (the Code).

The Code and its language is ubiquitous, it applies to all journalists and in no way references conduct towards one nation or another.  (JA137, and Ex. A to

11

Amended Complaint). The Court's requirement that the posting be of the same country, is narrower than the legal standard requires to find a comparator.

Plaintiff's Complaint contends that he did not make any social media postings that violated the Code. Again, these are private social media postings, not job-required or job-related posts. They are posting these at home not in any way related to MBN or their employment. Despite that the Plaintiff has pled that his postings did not violate the Code, nor that they could identify any at termination, Plaintiff pointed to numerous other "comparators" that he contends did have postings that violated the Code.

According to MBN's Code, only "inflammatory or otherwise inappropriate" posts are prohibited. In the case of Isaac, he was terminated for posting on social media for allegedly violating the Code, despite NOT violating the Code. His comparators were NOT terminated for posting on social media despite violating the Code. However, all parties do post on social media, but only Isaac and two other Iraqi-journalists were terminated.

    iv. <u>MBN Journalists without the same direct supervisor.</u>

In this case, the singularly most relevant factor for comparison is that they are journalists bound by the Code and that it is not being enforced against non-Iraqi journalists the same way. The type of journalist and/or their supervisor doesn't make a difference. This is why other Iraqi journalists (with different supervisors) were also targeted.

"In one recent inferential discrimination case, we required plaintiffs to 'share the same supervisor,' among other things. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (relying on *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). But that requirement (as the progeny of *Mitchell* have long noted) 'does not automatically apply in every case' and is not a bar to relief in a case like this one, where the comparators are otherwise similar in 'all relevant respects.' *See McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005); *see also Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (same-supervisor requirement does not apply to all factual situations; rather, comparators must be similar in 'relevant aspects'); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (finding that imposing a strict same-supervisor requirement in an ill-fitting case was error; instead, comparators must be similar 'in all material respects'); *cf. Eaton v. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (stating that a comparator sharing the same supervisor is only 'generally' required and noting that the similarly-situated requirement 'ought not be construed so rigidly or inflexibly that it [becomes] a useless analytical tool' (quoting *South v. Ill. Env't Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007)); *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) ('[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.')." *Tinsley v. City of Charlotte*, 854 F. App'x 495, 510-11 (4th Cir. 2021).

In his Amended Complaint, Isaac identified numerous MBN Journalists who post content that actually does violate the Code, but they have not been reprimanded and the tweets remain. These include Ms. Jebai and Ms. Bdewi. (JA139 and JA140). Further still, Plaintiff identifies non-Iraqi journalists Mr. Ghanem, Mr. Khawly, and Ms. Dehen. (JA140). Plaintiff identified that these postings violated the Code and attached samples of them as Exhibit C to the Amended Complaint. (JA141). All of these comparators were journalists, all of them were bound by the Code, although they

13

did not share the same supervisor, they were all governed by the office of the president

for purposes of enforcement of the Code.  The Code does not differentiate between

types of journalist for purposes of the social media policy.  Again, Isaac never asserts

in his Amended Complaint that his post violated the Code. Nonetheless, the Amended

Complaint asserts that non-Iraqi MBN Journalists, bound by the Code, are actually

violating the Code without any issue from MBN.  Conversely, Plaintiff was terminated

for an initially unidentifiable tweet that does not even violate the Code. Similarly,

other Iraqi journalists, who have not violated the Code, have been terminated by MBN

who used the Code as the reason.

Again, this is being assessed at the motion to dismiss stage. The facts pled in the

Amended Complaint more than plausibly establish facts beyond the speculative level.

*Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)(emphasis added).

v.     <u>Plaintiff has pled that his Employer was aware of postings by<br>Comparators.</u>

This issue was raised by the Court in the initial motion but did not appear to be

an issue at the Amended Complaint stage.  Nonetheless, Plaintiff will address it here in

an abundance of caution.  Regarding whether or not the employer knew of the other

postings issue, at the pleading stage, Plaintiff may rely on facts asserted and the

reasonable inferences therefrom.  In this case, all of the postings have been made on

the same social media platforms.  All of the individuals have high visibility and work

for MBN.  The Amended Complaint references these individuals and their public

14

postings. It notates that at least three separate Iraqi employees were terminated for alleged postings. It is a reasonable inference that if Plaintiff was separately monitoring it for all of the written up Iraqi employees, that it was doing so for the non-Iraqi employees, less, again, they would be treating them differently. In addition, the Complaint does specifically reference Mr. Tawila who was certainly known to MBN, as he was reprimanded, but not terminated. (JA139 at paragraph 42). Thus, this was specifically pled in the case of Tawila. Further, given the number of individuals referenced and the context, it is a reasonable inference that MBN is aware of the postings of other employees.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court as to all counts and remand for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a) Plaintiff-Appellant hereby respectfully requests oral argument in this matter. Oral argument is appropriate because the issues in this case are significant to the parties, employees as well as employers.

Respectfully submitted,

STEVEN ISAAC

By Counsel:

_/s/ Dirk McClanahan_____
Dirk McClanahan, Esq. (VSB# 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Phone: (703) 520-1326
Email: dmcclanahan@mcplegal.com

***Counsel for Plaintiff- Appellant***

## CERTIFICATE OF COMPLIANCE

1.     This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

This document contains <u>3,536</u> words.

2.     This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Respectfully submitted,

STEVEN ISAAC

By Counsel:

 <u>/s/ Dirk McClanahan_____</u>
Dirk McClanahan, Esq. (VSB# 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Phone: (703) 520-1326
Email: dmcclanahan@mcplegal.com

***Counsel for Plaintiff- Appellant***

17